## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **DANIEL H.,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **No. 1:20-cv-00475-GZS** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant** | ) | |

## REPORT AND RECOMMENDED DECISION

The Plaintiff in this Social Security Disability and Supplemental Security Income appeal contends that the Administrative Law Judge (ALJ) impermissibly construed raw medical evidence to formulate his mental residual functional capacity (RFC), warranting remand pursuant to *Staples v. Berryhill* ("*Lisa Staples*"), No. 1:16-cv-00091-GZS, 2017 WL 1011426 (D. Me. Mar. 15, 2017) (rec. dec.), *aff'd*, 2017 WL 1194182 (D. Me. Mar. 30, 2017). *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 27) at 3-19. I agree and, on that basis, recommend that the Court vacate the Commissioner's decision and remand this case for further proceedings consistent with this decision.

### I. Background

This case returns to this Court after the Plaintiff appealed a 2018 ALJ decision denying benefits, *see* Record at 15-24, and the Commissioner filed a motion for reversal and remand that this Court granted in April 2019, *see id*. at 1051-56. In a

May 2019 order remanding the case to the ALJ, the Appeals Council found that the ALJ had "appropriately discounted the opinions of the reviewing consultants at the initial and reconsideration stages that the [Plaintiff] did not have a severe mental impairment" but "did not explain the basis of his finding" that the Plaintiff retained the capacity "to perform simple work tasks in a non-fast/assembly-line type production-paced setting; . . . have occasional interaction with the public, supervisors and co-workers; . . . make simple work-related decisions; . . . adapt to simple changes in routine work setting; and [would] require[] the availability of a five-minute break every hour, with the understanding that he otherwise is satisfying daily production expectations." *Id.* at 1060 (cleaned up).

The Appeals Council noted, in particular, that the ALJ had not explained "the basis of his finding that the [Plaintiff] required a five-minute break every hour versus some other amount of time off task" and had not accorded the testimony of the Plaintiff's supervisor Michael Bennett "any specific weight," deeming Bennett's testimony consistent with an ability "to perform simple work on a full-time basis" when the finding that the Plaintiff retained that capacity was inconsistent with Bennett's testimony that the Plaintiff "struggled with conflict, especially as regards children or students; . . . was inconsistent as far as showing up on time; his behavior was often-times overlooked; he could not be in a standalone male dorm because he was not consistent or reliable; and [Bennett] would not hire the [Plaintiff] for a full-time, residential position." *Id.* at 1061.

2

The Appeals Council directed the ALJ to "[g]ive further consideration to the [Plaintiff]'s maximum [RFC] during the entire period at issue and provide rationale with specific references to evidence of record in support of assessed limitations," "further evaluate the opinion evidence of record," including that of Bennett, and "explain the weight given to such opinion evidence." *Id.*

The ALJ held a new hearing on January 9, 2020, following which, on January 28, 2020, he issued the decision at issue, finding, in relevant part, that the Plaintiff (1) had severe impairments of depressive, anxiety, and personality disorders, *id.* at 952, (2) was "limited to performing simple repetitive work tasks in a non-assembly line type production-paced setting, involving no public interaction or team/tandem collaborative type work with coworkers, and only occasional interaction with supervisors," and was "able to make simple work-related decisions and adapt to simple changes in [a] routine work setting," *id.* at 955, (3) could perform jobs existing in significant numbers in the national economy, *id.* at 962-63, and (4) therefore was not disabled, *id.* at 964. The Appeals Council found no reason to assume jurisdiction of the case following remand, *see id.* at 937-41, making the ALJ's decision the final determination of the Commissioner, *see* 20 C.F.R. §§ 404.984(a), (b)(2), 416.1484(a), (b)(2).

## II.  Standard of Review

A final decision of the Commissioner is subject to judicial review to determine whether it is based on the correct legal standards and supported by substantial evidence.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Seavey v. Barnhart*, 276 F.3d 1, 9

(1st Cir. 2001).   Substantial evidence in this context means evidence in the administrative record that a reasonable mind could accept as adequate to support an ALJ's findings.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  If an ALJ's findings are supported by substantial evidence, they are conclusive even if the record could arguably support a different result.  *See Irlanda Ortiz v. Sec'y of Health & Hum. Servs.*, 955 F.2d 765, 769 (1st Cir. 1991).  But an ALJ's findings "are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

### III.  Discussion

Although an ALJ is not "precluded from rendering common-sense judgments about functional capacity based on medical findings," he or she "is not qualified to assess [RFC] based on a bare medical record."  *Gordils v. Sec'y of Health & Hum. Servs.*, 921 F.2d 327, 329 (1st Cir. 1990).  In *Lisa Staples*, this Court held that remand was warranted when an ALJ rejected a treating source's mental RFC assessment and effectively conceded that the opinions of two agency nonexamining consultants that the claimant had no severe mental impairment could not stand as substantial evidence because evidence unseen by them demonstrated that the claimant's mental impairments were severe.  *See Lisa Staples*, 2017 WL 1011426, at *4-5.  "Thus, instead of assessing a mental RFC that gave the [claimant] 'the benefit of the doubt' or otherwise was more favorable than the remaining evidence would support, the [ALJ]   .   .   .   assessed   an   RFC   unsupported   by   substantial evidence."  *Id.* at *5; *compare Kristina D. B. v. Berryhill*, No. 1:18-cv-00088-JHR,

2019 WL 1407407, at *3-4 (D. Me. Mar. 28, 2019) (affirming when an ALJ rejected expert opinions not because of later-submitted evidence but because she chose to credit some of the claimant's subjective allegations) *with Linda C. T. v. Saul*, No. 2:20-cv-00060-NT, 2021 WL 371691, at *3-4 (D. Me. Feb. 3, 2021) (rec. dec.), *aff'd*, 2021 WL 728111 (D. Me. Feb. 24, 2021) (remanding when an ALJ discounted expert opinions on the basis of later-submitted evidence and partially rejected opinions of treating sources, thereby leaving her RFC findings unsupported "by any medical opinion evidence and, hence, not more favorable to the [claimant] than the record would otherwise support").

In this case, the ALJ's mental RFC assessment post remand was unsupported by any expert opinion. *See* Record at 960-61. The Commissioner argues that the ALJ nonetheless made "a commonsense interpretation of substantial, unambiguous evidence that Plaintiff's symptoms were manageable overall." Defendant's Opposition to Plaintiff's Itemized Statement of Errors ("Opposition") (ECF No. 31) at 1. She asserts that, in so doing, the ALJ did not impermissibly construe raw medical evidence and, in any event, the Plaintiff fails to identify the raw medical evidence he contends the ALJ construed. *See id*. at 6.

As the Plaintiff's counsel rejoined at oral argument, the ALJ did construe raw medical evidence in arriving at his mental RFC determination.

In finding, for example, that the Plaintiff had a moderate limitation in his ability to interact with others, the ALJ noted that although the Plaintiff's responses to then-recent personality testing conducted by R. Keith Hansen, Psy.D., suggested

that he was "very introverted," had "difficulty meeting and interacting with other people," and "tend[ed] to be very uneasy" and "rigid" in social situations, Dr. Hansen commented that the Plaintiff was "an enjoyable and engaging gentleman to work with."  Record at 954.  Yet, Dr. Hansen himself had a very different take on the significance of the Plaintiff's demeanor during testing: he opined that the Plaintiff's "social difficulties and vulnerable periods of stress, moodiness, and ineffectiveness are likely to interfere with his ability to sustain employment, and his current view of work as onerous an[d] unrewarding [is] likely to interfere with obtaining new employment." *Id.* at 961.

In addition, in finding that the Plaintiff had a mild limitation in concentrating, persisting, or maintaining pace, the ALJ noted that neuropsychological testing had "confirmed all abilities assessed were at least at an average level, with most in the high average range o[r] higher" and a superior score in attention.  *Id.* at 954. However, the Plaintiff did not claim that his alleged functional difficulties were the result of cognitive impairment but, rather, of his mental impairments (depressive, anxiety, and personality disorders).  *See, e.g.*, *id.* at 954 (noting that the Plaintiff "testified he was unable to work due to the limiting effects of his mental health limitations"); *see also id.* at 952.

Finally, in determining that the Plaintiff had a moderate limitation in adapting or managing himself, the ALJ discounted the Plaintiff's report that he only attended to household tasks intermittently and rarely undertook other activities, as well as the Plaintiff's brother's report that the Plaintiff had difficulty handling basic

activities of daily living, on the basis that the medical evidence did not confirm those reports. He explained, "Although the record reflects chronic mental illness with episodic exacerbation requiring hospitalization, longitudinally, his symptoms return to a baseline level of severity that allowed him to . . . engage in part-time work with mental demands greater than the decision's [RFC] provides." *Id.* at 954.

Even assuming that the mental demands of the Plaintiff's part-time jobs as a dorm parent, ski instructor, and/or tennis instructor exceed those of which the ALJ deemed him capable, it is not self-evident either as a general proposition or on the facts of this case that an ability to work part-time at a more demanding job evidences an ability to work full-time at a simpler one:

> The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances. The mentally impaired may cease to function effectively when facing such demands as getting to work regularly, having their performance supervised, and remaining in the workplace for a full day.
>
> ***
>
> Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's condition may make performance of an unskilled job as difficult as an objectively more demanding job.

SSR 85-15, 1985 WL 56857, at *6 (1985).

As the Appeals Council noted, Bennett, the Plaintiff's supervisor, testified at the first hearing that the Plaintiff struggled with conflict, particularly with students and children, and could not be in a standalone male dorm because he was inconsistent and unreliable, that his behavior was often overlooked, and that Bennett would not

7

hire him for a full-time residential position. *See* Record at 1061. In May 2019, after the first unfavorable decision and prior to the second hearing, the Plaintiff was essentially fired when he was informed that his contract for his part-time job would not be renewed in the fall, *see id.* at 959, and he moved into his mother's home after losing his job at the school, *see id.* at 960. The ALJ did not come to grips with how this evidence squared with his finding that the Plaintiff retained the capacity to perform simple work on a full-time basis.[1]

For similar reasons, the ALJ's RFC finding was not the product of a permissible commonsense judgment by a layperson. In assessing a limitation to "simple repetitive work tasks in a non-assembly line type production-paced setting," *id.* at 955, the ALJ again assumed that, although the Plaintiff was struggling with his part-time work, he could work full-time in a less demanding simple job, *see id.* at 958 ("In September and October 2018, [the Plaintiff] continued to report that he did not feel able to function at high levels of work at a fast-paced rate. The undersigned agrees, which is why the [Plaintiff] is limited to simple routine work."); *id.* at 959 ("While the undersigned agrees the [Plaintiff] is unable to work at such a stressful job, his symptoms do not prevent him from performing simple routine work."). Yet,

---

[1] Cases cited by the Commissioner for the proposition that the "Plaintiff's admittedly manageable symptoms, ability to perform a range of activities, and positive response to treatment substantially support the ALJ's reasonable conclusion that he could perform a reduced range of simple, routine work," Opposition at 5, are distinguishable in that, in those cases, the ALJs' mental RFC findings were also supported by at least one expert opinion, *see Patrick M. v. Saul*, No. 1:18-cv-497-NT, 2019 WL 3997260, at *3-4 (D. Me. Aug. 23, 2019); *Durgin v. Berryhill*, No. 2:17-cv-00241-DBH, 2018 WL 1532668, at *2 (D. Me. Mar. 28, 2018) (rec. dec.), *aff'd*, 2018 WL 2108012 (D. Me. May 7, 2018); *Dixon v. Berryhill*, No. 17-77 WES, 2018 WL 1417729, at *6-7 (D.R.I. Mar. 21, 2018); *Melland v. Soc. Sec. Admin. Comm'r*, No. 1:11-cv-00223-NT, 2012 WL 1800722, at *6 (D. Me. Apr. 26, 2012) (rec. dec.), *aff'd*, 2012 WL 1800045 (D. Me. May 16, 2012); *Anderson v. Astrue*, No. 1:11-cv-109-DBH, 2012 WL 283018, at *2 (D. Me. Jan. 30, 2012) (rec. dec.), *aff'd*, 2012 WL 529969 (D. Me. Feb. 17, 2012).

the ALJ did not explain how he reached that conclusion, and it is not self-evident on this nuanced record.

The same is true of the ALJ's finding that the Plaintiff retained the ability to perform work involving no public interaction or team/tandem collaborative type work with coworkers and only occasional interaction with supervisors. *See id.* at 955. In rejecting the testimony of the Plaintiff and his brother that he had issues dealing with people, the ALJ noted that treatment records revealed that the Plaintiff "wanted to spend more time with people," "spent some time swimming at his brother's camp," "went golfing," expressed frustration over getting most of his information about his children and grandchildren through social media and about his former employer not contacting him about volunteering, reported that he was able to manage anxiety over family members' surgeries, continued to make attempts to contact his sons while trying to limit disappointment, and was interested in dating a female friend. *Id.* at 960. He added that the Plaintiff's medication management notes documented that the Plaintiff's "mood and anxiety tend to fluctuate but overall are manageable" and that "[h]is most recent therapy note reflects moderate progress, with ongoing concerns about family stressors, but stating that he was using more positive thinking, and he had better focus and concentration in day-to-day life." *Id.* Yet, again, the ALJ did not explain how he built a bridge from this evidence to the specific limitations assessed, and it is not self-evident.[2]

---

[2] The Commissioner argues that any error in assessing social limitations is harmless because the ALJ found the Plaintiff capable of performing jobs that involve dealing primarily with objects rather than people. *See* Opposition at 9-11. Even if true, this point is not outcome-determinative. The ALJ's error in deeming the Plaintiff capable of performing full-time simple work still requires remand.

For these reasons, the ALJ's RFC is unsupported by substantial evidence. That, in turn, undermines his reliance on the testimony of a vocational expert to carry the commissioner's Step 5 burden of demonstrating that the plaintiff was capable of performing jobs existing in significant numbers in the national economy. *See id.* at 963-64; *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).

## IV. Conclusion

For the foregoing reasons, I recommend that the Commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent with this decision.

### *NOTICE*

*A party may file objections to those specified portions of a Magistrate Judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the District Court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the District Court and to appeal the District Court's order.*

Dated: July 28, 2022

/s/ Karen Frink Wolf
United States Magistrate Judge